## A04A1580. MONROE v. HYUNDAI MOTOR AMERICA, INC.

### (606 SE2d 894)

SMITH, Chief Judge.

Approximately three years after he purchased a vehicle from Hyundai Motor America, Inc. (HMA), Bryan Monroe brought this action against HMA claiming breach of express warranty, breach of implied warranty, and revocation of acceptance. Both parties moved for summary judgment. The trial court granted summary judgment to HMA and denied the motion filed by Monroe. Monroe appeals. Because we conclude that the trial court correctly found that Monroe failed to present competent evidence of damages, we affirm.

In November 1999, Monroe purchased a 1999 Hyundai Sonata from HMA dealer SouthTowne Hyundai. The vehicle had an odometer reading of 6,336 miles at the time of purchase. Monroe received with the vehicle the 1999 Sonata Owner's Handbook, which contained a new vehicle limited warranty providing for "[r]epair or replacement of any component originally manufactured or installed by Hyundai Motor Company or Hyundai Motor America (HMA) that is found to be defective in material or workmanship under normal use and maintenance, except any item specifically referred to in the section 'What is Not Covered.'" In the "What is Not Covered" section, incidental or consequential damages including inconvenience, loss of time, loss of use, or commercial loss were excluded from coverage.

In an affidavit submitted in support of his opposition to HMA's motion for summary judgment, Monroe chronicled the repair history of his vehicle. He took the car to an authorized dealer for repairs on at least 12 occasions. The car experienced repeated engine and electrical system problems, including problems with dimming lights and loss of engine power. The car was towed to the dealership twice because it would not start, and Monroe experienced problems with the windshield wiper jets and the blinker assembly. The air conditioning system stopped functioning at least twice. The repair visits included at least two visits for recall-related items.

Various repairs were performed during these visits. Among other things, oxygen sensors and the battery were replaced on different occasions. Spark plug cable and wire sets were replaced. After the blinker arm broke off, the lighting switch assembly was replaced. The battery terminals were cleaned and the charge system checked. A technician "replugged" the air conditioning system, and when the system malfunctioned a second time, the servicing technician told Monroe "that he wrapped the plug with electrical tape to prevent it from coming unplugged."

In granting summary judgment to HMA, the trial court concluded that Monroe failed to present "any competent evidence to support his claims for breach of warranty" and damages. The court

further concluded that Monroe did not present evidence that HMA "failed or refused to repair any defect in the vehicle." Finding that Monroe presented no evidence that the vehicle was unmerchantable at the time of sale, the trial court concluded that Monroe's claim for breach of implied warranty failed. Finally, the court found that Monroe's attempted revocation of acceptance was not done in a timely and effective manner.

Monroe argues on appeal that he provided sufficient evidence that HMA breached both express and implied warranties, that the trial court erred in striking portions of his affidavit concerning damages, and that the court erred in concluding that he failed to provide sufficient evidence of damages. We address only Monroe's arguments related to damages, as those arguments are dispositive of the remaining contentions in this case.

The measure of damages in a breach of warranty action "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." OCGA § 11-2-714 (2). See also *Fiat Auto U. S. A. v. Hollums*, 185 Ga. App. 113, 115-116 (4) (363 SE2d 312) (1987). Monroe correctly points out that an owner of property can be qualified to state an opinion as to value. *Dixon v. Williams*, 177 Ga. App. 702, 704 (340 SE2d 286) (1986). See also *Johnson v. Rooks*, 116 Ga. App. 394 (157 SE2d 527) (1967). But

> [o]pinion evidence as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.

(Citations and punctuation omitted.) *Dixon*, supra, 177 Ga. App. at 704. See also *Sykes v. Sin*, 229 Ga. App. 155, 156 (493 SE2d 571) (1997) (physical precedent only).

The purchase price of the Sonata "was some evidence of the value the car would have had if it had been as warranted." *Fiat Auto*, supra, 185 Ga. App. at 116. As for the value of the car as accepted, Monroe testified by affidavit that he was "familiar with purchasing vehicles," had purchased at least ten cars, both new and used in his lifetime, and was "familiar with cars and what they cost to buy." Monroe also testified that before purchasing the Sonata, he "researched the car market to see how much vehicles were going for at that time" and that he "also looked at other comparable makes and models of automobiles." He stated that if he had "known about the defects and

nonconformities in this vehicle, [he] would not have paid more than $12,000 for it on" the date of purchase. The trial court struck these statements concerning value, reciting in its order that the affidavit "does not give an opinion as to the value of the vehicle but merely states what the plaintiff believes [he] should have paid for the vehicle. That fact is not relevant to the issues in this case."

"The admission of evidence lies [within] the sound discretion of the trial court. [Cit.]" *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902 (2) (517 SE2d 365) (1999). And it is well established that the question of whether a "witness has established sufficient opportunity for forming a correct opinion, and a proper basis for expressing his opinion, is for the trial court. Absent an abuse of discretion, the trial court's decision will not be disturbed." (Citations and punctuation omitted.) *McCorkle v. Dept. of Transp.*, 257 Ga. App. 397, 403 (3) (571 SE2d 160) (2002).

This case is distinguished from *Rooks*, supra. In that case, the plaintiff testified that he had repaired automobiles in the past and had repaired his own damaged automobile. 116 Ga. App. at 396-397. Thus, the plaintiff showed that he had had opportunities for forming a correct opinion. Here, as argued by HMA in its appellate brief, Monroe has not shown that he has training in automobile repair "or in appraising defective or nondefective vehicles."

This case is also distinguished from *Long v. Marion*, 182 Ga. App. 361 (355 SE2d 711) (1987) (physical precedent only), cited by Monroe. In that case, the defendant testified concerning the value of his 1953 Bentley automobile. This court concluded that a proper foundation had been laid for this testimony, finding among other things that the defendant had "related his knowledge and familiarity with classic type vehicles." Id. at 364-365. In contrast here, even though Monroe based his opinion on past purchases and had researched the car market before purchasing the Sonata, HMA correctly points out that Monroe "does not testify that *any* of these past vehicle purchases included a purchase of a vehicle with the purported defects, and what his 'research' involved" and that Monroe's affidavit "addresses the usefulness of the vehicle to him," rather than its fair market value. See *Hutto v. Shedd*, 181 Ga. App. 654, 656 (2) (353 SE2d 596) (1987).[1] The outcome here is not controlled by cases such as *Canal Ins. Co. v. Savannah Bank & Trust*, 181 Ga. App. 520 (352 SE2d 835) (1987) or

---

[1] Although we are not bound by decisions from foreign jurisdictions, we note that the facts of this case share some similarities to those in *Kim v. Mercedes-Benz, U. S. A.*, 818 NE2d 713 (2004). In *Kim*, the Appellate Court of Illinois upheld the lower court's decision to exclude the plaintiff's testimony concerning value, stating among other things that the plaintiff failed to demonstrate personal knowledge of the value of the vehicle at issue "in its allegedly defective state."

*Burch v. Lawrence*, 150 Ga. App. 351 (258 SE2d 35) (1979), also cited by Monroe. In those cases, the parties testifying concerning automobile value either relied on "Blue Book" values or agreed that their "evaluation[s] fell within the range of 'Blue Book' valuations." *Canal Ins.*, supra, 181 Ga. App. at 522 (3); *Burch*, supra, 150 Ga. App. at 351. Monroe provided no such foundation, and the trial court did not abuse its discretion in striking Monroe's testimony concerning the value of the Sonata in its allegedly defective condition at the time of purchase.

On motion for summary judgment, HMA challenged Monroe's ability to prove damages. The burden then shifted to Monroe to present competent evidence of damages. "[I]t is the duty of each party at summary judgment to present his case in full or risk judgment going against him. [Cit.]" *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 681 (2) (498 SE2d 748) (1998). See also *Dixon Dairy Farms v. Conagra Feed Co.*, 245 Ga. App. 836, 837 (538 SE2d 897) (2000). Even assuming, without deciding, that a breach of warranty occurred, Monroe failed to present competent evidence of damages, and the trial court did not err in granting summary judgment to HMA. We need not reach Monroe's remaining arguments.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 16, 2004 —

*Krohn & Moss, Adam Krohn, Amy M. Budow, Eric S. Fortas, Shireen Hormozdi, David A. Stevens*, for appellant.

*McKenna, Long & Aldridge, Jeremy M. Moeser, Eugene M. Thomas IV*, for appellee.