IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2019

## RANDY B. DALTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Grainger County
Nos. 5641, 5782-83     James L. Gass, Judge**

_____

### No. E2018-01827-CCA-R3-PC
_____

In 2016, the Petitioner, Randy B. Dalton, pleaded guilty to offenses contained in three indictments: aggravated robbery, theft of a vehicle valued at more than $1,000, escape from a penal institution, harvesting ginseng out of season, and harvesting ginseng out of season with less than three prongs. Pursuant to a plea agreement, the trial court imposed partial consecutive sentencing with a total effective sentence of eighteen years of confinement. In 2017, the Petitioner filed a petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel. Following a hearing, the post-conviction court denied the petition. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT H. MONTGOMERY, JR., JJ., joined.

Robert M Burts, Rutledge, Tennessee, for the appellant, Randy B. Dalton.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulman, Senior Assistant Attorney General; James B. Dunn, District Attorney General; and George C. Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts and Background
### A. Guilty Plea

This case originates from the Petitioner's robbing a drugstore, from which he stole

prescription narcotics after telling the store clerk that he had a bomb. For these offenses, the Petitioner was indicted in case no. 5641 with aggravated robbery and possession of a hoax device. While on work release, the Petitioner escaped custody and stole a vehicle belonging to the Grainger County Board of Education. For these offenses, the Petitioner was indicted in case no. 5782 for theft of property valued at more than $1,000 and felony escape from a penal institution. Following his escape, the Petitioner was found to be in possession of wild ginseng outside of harvesting season, to which he admitted he had harvested with "less than three prongs." For these offenses, the Petitioner was indicted in case no. 5783 with harvesting ginseng in closed season and harvesting ginseng with less than three prongs. In July of 2016, in case no. 5641, the Petitioner pleaded guilty to aggravated robbery with a sentence of twelve years of confinement to be served at 85%; the possession of a hoax device charge was dismissed by the State; in case no. 5782, the Petitioner pleaded guilty to theft of property valued at more than $1,000 with a sentence of six years of confinement to be served at 35% and to escape from a penal institution with a sentence of four years of confinement to be served at 35%; and in case no. 5783, the Petitioner pleaded guilty to one count of harvesting ginseng out of season and one count of harvesting ginseng with less than three prongs with sentences of eleven months and twenty-nine days of confinement for each of these convictions. The total effective sentence to serve was eighteen years.

Following the imposition of his sentences, the Petitioner filed a motion to reconsider his sentence. The Petitioner requested that the trial court order his sentence in case no. 5782 (theft and escape) to be served on probation in light of his family members' medical conditions and minor daughter. The trial court denied the motion.

## B. Post-Conviction

The Petitioner filed a petition for post-conviction relief, *pro se,* in which he alleged that he had received the ineffective assistance of counsel because trial counsel failed to investigate the monetary value of the stolen truck, which he contended was an issue of utmost importance to his case. An attorney was appointed for the Petitioner, and a hearing was held, during which the following evidence was presented: Trial counsel ("Counsel") testified that she was employed as an assistant public defender and represented the Petitioner in these three indictments. Counsel testified that she visited the Petitioner in jail, once accompanied by an investigator, and exchanged letters with the Petitioner. Counsel testified that she took the District Public Defender with her to a meeting with the Petitioner, hoping to communicate to the Petitioner the seriousness of his charges. Counsel and the Petitioner shared legal research and "look[ed] into the value of the truck" on Kelley Blue Book. Counsel recalled that the Petitioner stole the truck from the school system's garage where he was employed as a custodian. Counsel was aware that the school system had purchased the truck for $1,400 in 1998.

Counsel recalled the ongoing plea negotiations with the State and that the State offered a twenty-year sentence which the parties negotiated down to sixteen years. However, while that offer was pending, the Petitioner acquired new charges for theft and escape. As to the theft of the vehicle charge, Counsel researched the value of the vehicle via the Kelley Blue Book, which listed a value of over $1,000 for "good" condition and less than $1,000 for "bad" condition. The new charges became part of a comprehensive plea offer from the State for a twenty-year sentence, which the State indicated to Counsel was a firm offer that it would not lower. However, on the day of the plea, Counsel approached the State and negotiated the Petitioner's sentence to eighteen years. Counsel recalled that the Petitioner's maximum sentence exposure was lengthy.

Counsel stated that she worked diligently to help the Petitioner understand the sentences he was facing, and she recalled that he was very smart and knew exactly what was happening with his case. Counsel testified that she spent more time on the Petitioner's case than she typically does. She would not have allowed him to enter a plea if she felt the Petitioner was not aware or informed of his options.

The Petitioner testified that he had "good" knowledge of trucks because he bought and sold cars all his life. He stated that the stolen truck was valued at $500. He agreed he had seen the $1,400 bill of sale but stated that it had been used for almost twenty years since the purchase and would not have still been valued at more than $1,000. As an inmate, the Petitioner had worked at the school as a trustee, painting the trucks and getting them prepared for use, and he said this particular truck was in terrible shape. He stated that the vehicle had over 400,000 miles on it and the school system discussed "scrapping it." The Petitioner testified that, because Counsel did not adequately investigate the value of the truck, he pleaded to a higher class of felony and thus received a longer sentence. He stated that Counsel's boss, the District Public Defender, was of the opinion that the Petitioner was a Range I offender because of a "new law."

On cross-examination, the Petitioner agreed that he did not request another attorney. The Petitioner stated that he believed he should have been sentenced as a Range I offender, rather than a Range II, which would have made his sentencing range much lower.

The post-conviction court denied the petition, stating the following:

> The Court has listened to the testimony in this case and considered the record as it is before the Court. The chief complaints it would appear from [the Petitioner], is that he takes great issue with the value of a vehicle for which he was charged with felony theft. There's been his opinion stated

on the record that the vehicle would not have risen to the level of being of felony value.

. . . .

The issue as to Range I or Range II is complained about by the [Petitioner] today, but it appears that the State in accordance with the statute properly applied a Range II notice to this [Petitioner] for which he was on notice well before the day of his plea consideration. The Court did hear testimony that someone earlier, when he had pled earlier was offered some opinion about would it count as all one or not as one in an earlier proceeding; however, that was not to the knowledge of this Court done on the day that this plea was taken.

. . . .

The Court does find that the [Petitioner] was facing a substantial number of years -- 20, I believe -- for the robbery charge, aggravated robbery as a Range II offender; that he accepted by a universal agreement to resolve all of his charges a sentence of 12 years -- a substantial break in or relief in the potential for incarceration to him from what he could have faced had he gone to trial, been convicted, or pled openly without a trial and waived his right to a jury trial . . . .

Further, he received less than the maximum on the potential -- on the escape and theft charges in accepting six years which by law would be required to run with the 12 for an effective sentence of 18 years.

Those are both advantageous as Range II offenders, advantageous sentences to this [Petitioner]. They were mandated to run consecutive because of the escape and the crime while committed on escape. . . . . His plea was fully informed in the estimation of this Court, and I do find that in order for this to be advantageous he was required to take off the table the issue of consideration of the value of this motor vehicle that was taken during an escape.

[Counsel], for this record, did indicate she had been talking to the [Petitioner] since 2014, I believe. He pled around the 5th of July if my memory is correct -- of 2016.

All these things considered and all these findings now having been

4

made by the Court, the Court does further find that [the Petitioner] was afforded in all of these cases for which we are now here on -- not just the single case, but all of these cases referred to both for escape and theft and aggravated burglary, . . . but for all consideration, the Court specifically finds that he was afforded effective assistance of counsel.

The Court is mindful that [Counsel] has practiced many years, is very capable, and knows the process adequately to defend an individual in her role as an assistant public defender. She understands the rules. . . . .

The Court finds no constitutional violations as alleged by the [Petitioner] and therefore the petition for post-conviction relief is denied.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition for post-conviction relief. He claims that he received the ineffective assistance of counsel because Counsel failed to investigate the value of the stolen truck and failed to argue that the value was less than $1,000. This, he contends, lead him to plead to a greater class of felony which was "inappropriate" given the evidence and that he should not have been encouraged to plead guilty. The State responds that the Petitioner has not met his burden that he received the ineffective assistance of counsel. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. §40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this court, with no presumption of correctness. *Id.* at 457. "Where a petition conclusively shows that the petitioner is entitled to no relief, it is properly dismissed without the appointment of counsel and without an evidentiary hearing." *Givens v. State*, 702 S.W.2d 578, 580 (Tenn. Crim. App. 1985).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v.*

*Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State,* 599

S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). To demonstrate prejudice in the guilty plea context, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, she would not have pleaded guilty and would have insisted on going to trial. *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011).

The evidence presented in this case does not preponderate against the post-conviction court's findings. The evidence presented was that Counsel researched the value of the truck and determined, based on the guide in the Kelley Blue Book, that the truck had a value of more than $1,000. This determination was aided by the knowledge that the vehicle had been purchased for $1,400. Through the lens of whether Counsel's performance in this regard was "prudent" or "appropriate," we conclude that it was. We point out that Kelley Blue Book has been recognized as an objective guide to valuing vehicles. *See Government Employees Insurance co. v. Linda Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *45 fn. 37 (Tenn. Ct. App., June 29, 2007) (citing *Martinez v. Enterprise Rent-A-Car Co.*, 119 Cal. App. 4th 46, 56 (2005); *Hill v. Mercedez-Benz USA, LLC*, 274 Ga. App. 826,829; *In re General Motors Corp. v. Pick-Up Truck Fuel Tank Prods. Liabil. Litig.*, 55 F.3d 768, 816 (3d Cir. 1995). Relying on the value named in the guide was a prudent strategy on the part of Counsel.

Additionally, the Petitioner cannot show prejudice. The evidence was that Counsel worked diligently to negotiate a "substantial break" for the Petitioner in his comprehensive plea to a sentence considerably lower than the potential sentences for these offenses. The Petitioner has not met his burden in showing that, had Counsel presented more or different proof on the value of the truck, the outcome of his case would have been different. The Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the

judgment of the post-conviction court.

                            _____
                            ROBERT W. WEDEMEYER, JUDGE